## C. M. Barickman and H. B. McGregor v. J. R. Cantrall and Alva Cantrall, Copartners as J. R. Cantrall & Son.

1. CONTRACTS—*Binding upon Those by Whose Directions They Are Made.*—Where a written contract is made by the express directions of a party and for his benefit, such party will be bound by it although he does not sign it.

Assumpsit, for commissions. Error to the Circuit Court of Douglas County; the Hon. WILLIAM G. COCHRAN, Judge, presiding. Heard in

this court at the May term, 1900.   Affirmed.   Opinion filed September 11, 1900.

ECKHART & MOORE, attorneys for plaintiffs in error.

ROY F. HALL, attorney for defendants in error.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

This was an action of assumpsit by defendants in error against plaintiffs in error, tried by jury in the Circuit Court of Douglas County, where defendants in error recovered a verdict and judgment for $600, to reverse which, plaintiffs in error prosecute a writ of error from this court.

The claim of defendants in error is that on February 15, 1898, plaintiff in error executed and delivered to them the following contract in writing:

"We agree to give J. R. Cantrall & Son five (5) per cent on the sale or trade of our land, located in the Yazoo Valley, between Yazoo and Sunflower rivers, in trade at Frankfort, Indiana, with A. J. Miller.   In case the same is sold or exchanged through the agency of J. R. Cantrall & Son, we agree to pay J. R. Cantrall & Son five (5) per cent commission on price at which sold or exchanged, whether or not a commission is collected from the party to whom said property is sold or exchanged.   In case the land is traded at less than $8 per acre, a commission of three (3) per cent will be accepted.

C. M. BARICKMAN.   [SEAL.]
H. B. McGREGOR.   [SEAL.]

February 15, 1898."

That on February 16, 1898, defendants in error obtained the following agreement in writing:

"This agreement, made and entered into by and between A. J. Miller of Frankfort, Indiana, party of the first part, and C. M. Barickman of Pontiac, Illinois, party of the second part,

WITNESSETH: Party of the first part sells and trades to the party of the second part his entire stock of general merchandise, situated in room 124, being the north room of the Coulter Opera House Block, Frankfort, Indiana.   It is agreed by and between both parties that the said stock of goods shall be invoiced at the marked cost price, the same

that is now marked on said goods or boxes containing said goods. And in payment for said stock of goods, party of the first part agrees to accept warranty deed for twelve hundred acres of land, situated in Yazoo county, Mississippi, at the agreed price of $12,000. Party of the second part agrees to execute good and sufficient warranty deed and to furnish an abstract for said land showing perfect title in grantor free and clear of incumbrance, and agrees to pay up all taxes due to date. It is further agreed by and between both parties that if said stock of goods shall invoice sixteen thousand ($16,000) dollars, more or less, party of the second part agrees to pay the difference between price of said land and up to sixteen thousand ($16,000) dollars in cash, and if said stock shall invoice more than sixteen thousand ($16,000) dollars, then first party shall have the privilege to select goods from said stock enough to reduce said stock to $16,000. Party of the first part reserves all the store fixtures and furniture in said room and agrees to lease same to party of the second part for the sum of five ($5.00) dollars per month—as long as said second party may continue business in said room. The work of invoicing shall begin not later than Monday, February 21, 1898, and shall be completed as soon as possible. It is further agreed by and between both parties that as an evidence of good faith, each party to this contract shall deposit one thousand ($1,000) dollars at the Farmers' Bank at Frankfort, Indiana, as a guarantee of good faith for the faithful compliance with this contract, and if either party to this contract shall fail to comply, reject or refuse to comply with this contract, then said Farmers' Bank is hereby authorized and instructed to pay over both amounts so deposited to the party ready and willing to carry out his part, and the same shall be in full as liquidated damages. It is further agreed that as soon as said stock of goods is invoiced as above stated, party of the second part agrees to make payment to the party of the first part as agreed in this contract. Party of the first part agrees to deliver said stock of goods to the party of the second part clear of incumbrance, and also shall execute bill of sale for said stock of goods to the party of the second part. No goods shall be added to the said stock, and no goods shall be taken out, except as retailed in the regular way.

It is further agreed that if the party of the second part can not procure abstract by the time said stock is invoiced, he may have an additional thirty (30) days. Party of the

first part retains possession of goods until payment is fully made.

It is further agreed that each day's sale after said stock of goods is invoiced shall be deposited at the Farmers' Bank until possession is given to the second party.  As soon as the second party makes full payment to the first party, the first party shall immediately execute a bill of sale for said stock of goods free of incumbrance to the second party.

(Signed)    A. J. MILLER,
(Signed)    C. M. BARICKMAN.

Dated at Frankfort, Indiana, this 16th day of February, 1898."

That said written agreement, although only signed by A. J. Miller and C. M. Barickman, one of the plaintiffs in error, was in fact binding upon H. B. McGregor, the other plaintiff in error, as it was made by his express directions for his benefit, and that he in fact accepted its provisions and participated in taking the inventory of the stock of goods, and that the forfeit money was actually put up in accordance with the provisions of the agreement.

Plaintiffs in error do not deny but that both of the above agreements were made, but insist that inasmuch as McGregor did not sign the latter agreement, he is not bound thereby; and if he is not bound by it, then his co-party, Barickman, is not liable in this joint action against both.

The evidence shows that McGregor, by his letter to Barickman written on the day the latter agreement was executed, expressly authorized the latter to enter into that agreement for both of them, and that he afterward assisted in invoicing the goods as provided in the agreement, accepted the stock of goods as joint owner with Barickman, and was in every way treated by both Miller and Barickman as a party thereto, and therefore is bound to the same extent as though he had executed it himself.

It is also charged that fraud and deceit were practiced upon Barickman by Alva Cantrall, one of the defendants in error, to induce him to make the exchange of the Mississippi land for the stock of goods, but we do not believe that the evidence sustains that charge; and we are satisfied that the evidence warranted the jury in concluding that Mc-

Gregor was bound by the written agreement signed by Miller and Barickman the same as if he had signed it himself.

The rulings of the court on the instructions were not prejudicial to plaintiffs in error as they claim, for while they are in some respects open to some criticism, yet on the whole the court fairly directed the jury, and their verdict is proper under all the evidence in the record; therefore we affirm the judgment in this case.    Judgment affirmed.